UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:20-cv-80677-UU

SA PALM BEACH LLC,

    Plaintiff,

v.

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON, *et al.*,

    Defendants.
_____/

# ORDER

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss the Amended Complaint (the "Motion"). D.E. 24. The Court has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises. For the reasons that follow, the Motion is GRANTED.

**I.**    **Background**

Unless otherwise indicated, the following facts come from Plaintiffs' Amended Complaint [D.E. 22] (the "Amended Complaint") and are accepted as true.

Plaintiff SA Palm Beach LLC operates a restaurant by the name of "Sant Ambroeus Palm Beach," located at 340 Royal Poinciana Way in Palm Beach, Florida. D.E. 22 ¶ 16. Defendants Certain Underwriters at Lloyd's London ("Defendants") issued to Plaintiff commercial property insurance policy number PXA0001184-0, covering the policy period December 12, 2019 through December 12, 2020 (the "Policy"). *Id.* ¶ 17. Plaintiff describes the Policy as an "all-risk" commercial property insurance policy, "which cover[s] loss or damage to the covered premises resulting from all risks other than those expressly excluded." *Id.* ¶ 35. The Policy provides

"business interruption coverage," which "would indemnify Plaintiff for lost income and profits in the event that its business was shut down." *Id.* ¶ 37. More specifically, the Policy includes a "Business Income (and Extra Expense) Coverage Form" that provides coverage for "Business Income" and "Extra Expense," as well as additional coverage for actions taken by a "Civil Authority." *Id.* ¶¶ 38–41.

Plaintiff alleges that as a direct result of the global COVID-19 pandemic and certain governmental orders that restricted restaurant operations, Plaintiff has "suffered a direct physical loss of [its] property" because it has "been unable to use [its] property for its intended purpose." *Id.* ¶ 44. Plaintiff identifies "a series of Executive Orders relating to coronavirus protection" issued by Florida Governor Ron DeSantis. *Id.* ¶ 34. Specifically, Executive Order 20-68, issued on March 17, 2020, "provided that restaurants were to operate at 50% capacity, maintain 6-foot distances between parties, and prohibit any employees from working if they exhibited any listed symptoms of COVID-19." *Id*. In addition, Executive Order 20-70, issued on March 20, 2020, "ordered all bars and food-serving establishments in Broward and Palm Beach Counties closed except for delivery and take-out service." *Id.* Executive Order 20-71, also issued on March 20, 2020, "imposed similar restrictions on restaurants state-wide in Florida." *Id.* And under Executive Order 20-89, issued on March 30, 2020, Governor DeSantis "closed all non-essential businesses in Palm Beach County." *Id.* Plaintiff alleges that as a result of these orders, it "lost the physical use of its property and was forced to suspend and curtail business operations," and that it "suffered a direct physical loss to the property in the form of diminished value, lost business income, and forced physical alterations during a period of restoration." *Id.* ¶ 45.

On April 8, 2020, Plaintiff notified Defendants of its purported business income losses and extra expenses pursuant to the relevant policy provisions. *Id.* ¶ 49. Thereafter, by letter dated July

10, 2020, Defendants allegedly informed Plaintiff "that the claim will be investigated, and identified several policy exclusions they contend may apply." *Id.* ¶ 52. According to Plaintiff, however, Defendants "have no intention of providing any coverage or indemnification under the polic[y]" for Plaintiff's purported business income losses stemming from the COVID-19 pandemic. *Id.* ¶ 57. Plaintiff asserts that Defendants "are summarily denying the obligation to pay for business income losses and other covered expenses incurred by policyholders for the physical loss and damage to the insured property from measures put in place by civil authorities." *Id.* ¶ 7.

Plaintiffs filed the Amended Complaint on July 13, 2020, asserting several causes of action against Defendants for declaratory judgment, breach of contract, and anticipatory breach of contract. Defendants filed the Motion on July 27, 2020, seeking dismissal of the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion is fully briefed and ripe for adjudication.

## II.     Legal Standard

To state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While the Court must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Id.* (quoting

*Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw upon its judicial experience and common sense. *Id.* at 679. A court may dismiss a case with prejudice if the allegations of a complaint, even when taken as true, afford no basis for relief or when amendment would be futile. *E.g.*, *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)); *Chiron Recovery Ctr., LLC v. United Health Servs., Inc.*, 438 F. Supp. 3d 1346, 1356 (S.D. Fla. 2020).

**III.    Analysis**

Florida law places the initial burden on an insured seeking to recover under an all-risk policy of proving that a loss occurred. *See S.O. Beach Corp. v. Great Am. Ins. Co. of New York*, 305 F. Supp. 3d 1359, 1364 (S.D. Fla. 2018), *aff'd*, 791 F. App'x 106 (11th Cir. 2019). At this stage of the litigation, therefore, Plaintiff must sufficiently allege that its purported losses are covered under the Policy. *See Timber Pines Plaza, LLC v. Kinsale Ins. Co.*, 192 F. Supp. 3d 1287, 1293 (M.D. Fla. 2016). In determining coverage under an insurance policy, a court's inquiry begins with "the plain language of the policy, as bargained for by the parties." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). In other words, "insurance contracts are construed according to their plain meaning." *Garcia v. Federal Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006). If an insurance policy's language is unambiguous, it governs. *Steinberg*, 393 F.3d at 1230.

But where "the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous, and must be 'interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.'" *Id.* (quoting *Anderson*, 756 So. 2d at 34).

    A.  <u>The Policy</u>

Under the Business Income (and Extra Expense) Coverage Form, the Policy provides coverage for lost income and certain expenses in the event of a business interruption or suspension. D.E. 24-1, pp. 60–70. Relevant here, the Policy provides coverage for "Business Income" and "Extra Expense," as well as additional coverage for actions taken by a "Civil Authority." *Id.* at 60–61. The Business Income Coverage section states, in relevant part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id*. at 60. The Extra Expense Coverage section provides coverage for "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." *Id*. The Civil Authority Additional Coverage section provides:

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than that at the described premises, caused by or resulting from any Covered Cause of Loss.

*Id.* at 61.

Relevant to the above coverage provisions, the Policy defines "suspension" as "[t]he slowdown or cessation of your business activities." *Id.* at 70. "Period of restoration" means the period of time that begins "after the time of direct physical loss or damage," and ends on the earlier of "[t]he date when the property at the described premises should be repaired, rebuilt or replaced," or "[t]he date when business is resumed at a new permanent location." *Id*. at 68. And "Covered Cause of Loss" is defined as "direct physical loss unless the loss is excluded or limited in this policy." *Id.* at 36. The terms "physical loss," "loss," and "damage" are undefined.

B. <u>Business Income and Extra Expense Coverage</u>

Defendants assert that the Amended Complaint should be dismissed because under the Business Income and Extra Expense Coverage sections, the "Policy provides coverage for business income and extra expense losses only if such losses are the result of 'direct physical loss of or damage to' the insured Property," and the Amended Complaint contains no plausible allegations that the insured property has suffered any such loss or damage. D.E. 24. Defendants contend that "Plaintiff makes conclusory allegations that it has suffered direct physical damage, but the Amended Complaint is devoid of any mention of what physical damage occurred, how the physical damage occurred, and when the physical damage occurred." *Id*. According to Defendants, "none of Plaintiff's allegations, even if taken as true, state a plausible claim that Plaintiff has suffered a 'direct physical loss or damage' as required to trigger coverage under the Policy." *Id.*

In response, Plaintiff argues that the Amended Complaint "plausibly alleges a 'direct physical loss'" by alleging that the governmental orders "rendered the property non-functional or only partially functional as it was no longer suitable for its intended purpose of 'physical' sit-down, fine-dining." D.E. 27. Plaintiff acknowledges that "the Policy does not define the words 'physical,' 'loss,' or 'damage,'" and turns to the dictionary in an effort to ascertain the "plain and

ordinary meaning" of those words. *Id.* Plaintiff contends that the dictionary definitions of "physical," "loss," and "damage" illustrate that "an ordinary 'person-on-the-street' would expect that Plaintiff suffered a 'physical loss' when it was 'deprived' of using its property with a material existence for its intended purpose." *Id.* Plaintiff also asserts that the "Policy's use of the disjunctive word 'or' rather than a conjunctive connector in the phrase 'direct physical loss of *or* damage to' demonstrates that an ordinary person would believe *either* a loss *or* damage would trigger coverage." *Id.* (emphasis in original).

Chief Judge Moore had occasion to consider the meaning of "direct physical loss of or damage to" property under a similar commercial insurance policy. *See Mama Jo's, Inc. v. Sparta Insurance Co.*, No. 17-CV-23362, 2018 WL 3412974, at *1 (S.D. Fla. June 11, 2018). In *Mama Jo's*, the plaintiff restaurant sought coverage for a purported loss "in the form of construction debris and dust" from construction roadwork that was performed at the street adjacent to the restaurant. *Id.* The plaintiff argued that "the migration of dust and construction debris from the roadwork adjacent to the restaurant caused damage to the restaurant" and "that this dust and debris constitute[d] 'direct physical loss' to the Property under the Policy." *Id.* at *8.

Judge Moore determined that the term "direct physical loss" contemplates "an *actual change* in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." *Id.* at *9 (internal quotation marks and citation omitted) (emphasis added). Judge Moore continued:

> "The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."

7

*Id.* (quoting Couch on Insurance § 148:46 (3d Ed. West 1998)).  Ultimately, Judge Moore concluded that the plaintiffs "cannot recover under the Business Income (And Extra Expense) Coverage because Plaintiff cannot show that there was any suspension of operations caused by 'physical damage.'"  *Id.* at *10.  Indeed, the restaurant in *Mama Jo's* "remained open every day, customers were always able to access the restaurant, and suppliers were always able to access the restaurant."  *Id.*

The Eleventh Circuit recently affirmed the *Mama Jo's* decision.  *See Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 880 (11th Cir. 2020).  In determining whether coverage existed under the policy at issue, the Eleventh Circuit also addressed the definition of "direct physical loss" and determined that "'direct' and 'physical' modify loss and impose the requirement that the damage be actual."  *Id.* at 879 (citing *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 2d 1067, 1069 (Fla. 3d DCA 2017)).  The Eleventh Circuit affirmed Judge Moore's order, holding that the plaintiff failed to show that it "suffered a loss which is both direct and physical."  *Id.* (internal quotation marks omitted).

Relying on *Mama Jo's*, Magistrate Judge Torres recommended dismissal of a case in which the plaintiff sought to recover insurance benefits for the loss of business income to its restaurant as a result of the COVID-19 pandemic.  *See Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615, 2020 WL 5051581, at *1 (S.D. Fla. Aug. 26, 2020).  In examining the commercial insurance policy at issue, Judge Torres found that the complaint failed to state a claim for coverage where the plaintiff "merely claim[ed] that two Florida Emergency Orders closed his indoor dining."  *Id.* at *8.  Judge Torres determined that those allegations alone "cannot state a claim because the loss must arise to actual damage."  *Id.*  Notably, Judge Torres compared the allegations in *Mama Jo's* to the allegations in the *Malaube* complaint and explained that the plaintiff in *Mama Jo's* "at least

alleged that there was a physical intrusion (i.e. dust and debris) into his restaurant." *Id*. In *Malaube*, on the other hand, the plaintiff failed to state a claim because "the restaurant merely suffered economic loss – not anything tangible, actual, or physical." *Id*. Moreover, Judge Torres explained that the words "repair" and "replace" in the policy's definition of "period of restoration" contemplated "physical damage to the insured premises." *Id.* at *9.

Similarly, Judge Bloom examined whether economic losses caused by a COVID-19 business closure constituted a "direct physical loss" or "physical harm." *See Raymond H. Nahman DDS PA v. Hartford Cas. Ins. Co.*, No. 20-CV-22833, 2020 WL 6392841 (S.D. Fla. Nov. 2, 2020). In *Nahman*, the insurance policy at issue included business income, extra expense, and civil authority coverage. *Id.* at *3. Judge Bloom found that there was no coverage under the business income and extra expenses provisions because the complaint "fail[ed] to allege 'direct physical loss of or physical damage to' the property, which is a necessary component of coverage under those provisions." *Id.*

In addition to the two orders referenced above, federal district courts throughout the country have dismissed substantially similar COVID-19-related lawsuits for failing to state a claim for business income coverage. *See, e.g.*, *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*, No. 20-CV-1605, 2020 WL 5791583, at *3 (M.D. Fla. Sept. 28, 2020) ("Here, there is no business income coverage and no civil authority coverage because the Amended Complaint fails to allege facts describing how the Property suffered any actual physical loss or damage. It is also apparent that any amendment would be futile under these circumstances."); *Seifert v. IMT Ins. Co.*, No. 20-1102, 2020 WL 6120002, at *3 (D. Minn. Oct. 16, 2020) (granting motion to dismiss and finding that the plaintiff's claims "fail to fall within the permissible realm of 'direct physical loss,' as he cannot allege facts showing his properties were actually contaminated or damaged by the

coronavirus."); *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, No. CV 20-3619, 2020 WL 6156584, at *4 (C.D. Cal. Oct. 19, 2020) ("[L]osses from inability to use property do not amount to "direct physical loss of or damage to property" within the ordinary and popular meaning of that phrase. Physical loss or damage occurs only when property undergoes a "distinct, demonstrable, physical alteration." (quoting *10E, LLC v. Travelers Indem. Co. of Conn.*, No. 20-CV-04418, 2020 WL 5359653, at *4 (C.D. Cal. Sept. 2, 2020)); *Hillcrest Optical, Inc. v. Continental Cas. Co.*, No. 20-CV-275, 2020 WL 6163142, at *9 (S.D. Ala. Oct. 21, 2020) (dismissing plaintiff's complaint with prejudice because plaintiff failed to allege a "direct physical loss of property").

Here, just like in *Malaube* and *Nahman*, the Business Income and Extra Expense Coverage sections require "direct physical loss of or damage to property." D.E. 24-1, p. 60. Each section also contemplates a "period of restoration," which, like in *Malaube*, uses the words "repair" and "replace" in its definition. In the Amended Complaint, Plaintiff alleges only that it has "suffered a direct physical loss of [its] property because [it has] been unable to use [its] property for its intended purpose," and that Plaintiff "suffered a direct physical loss to the property in the form of diminished value, lost business income, and forced physical alterations during a period of restoration." D.E. 22 ¶¶ 44, 45. But the Amended Complaint falls short of alleging that Plaintiff's property sustained any physical damage. The Court thus finds that Plaintiff's allegations are insufficient as a matter of law to establish coverage under the Business Income or Extra Expense Coverage sections.

### C. Civil Authority Additional Coverage

As for the Civil Authority Additional Coverage section, Defendants argue that the Amended Complaint "fail[s] to trigger the Policy's civil authority coverage" because Plaintiff fails to allege "direct physical loss or damage to property near the insured property," or that "access to

the Property has been prohibited because of such damage." D.E. 24. According to Defendants, "the first requirement of the civil authority coverage is that there be direct physical loss that causes damage to property other than the insured property," and the second requirement is that, as a result of that damage, "the civil authority must prohibit access to the insured location because the nearby property damage has created a dangerous condition." *Id.* Defendants contend Plaintiffs fail to allege these elements.

In *Nahmad*, Judge Bloom squarely addressed the coverage issue under a similar Civil Authority Coverage provision and found that the plaintiff failed to allege coverage under that provision. 2020 WL 6392841, at *9. In so finding, Judge Bloom reasoned that the complaint "allege[d] no physical harm to any properties in the immediate area, only suspensions and closures in general due to government orders," and that the complaint failed to "allege that access to the scheduled premises was specifically prohibited by order of a civil authority." *Id.* (internal quotation marks omitted). Judge Bloom explained that merely restricting access to the plaintiffs' business, without completely prohibiting access, "does not trigger coverage under the Policy's Civil Authority provision." *Id.*

Here, similar to the insurance policy in *Nahmad*, the Civil Authority Additional Coverage section requires an "action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises." D.E. 24-1, p. 61. In the Amended Complaint, Plaintiff fails to allege any physical damage to any property in the immediate area. Instead, Plaintiffs generally allege that as a result of Governor DeSantis's Executive Orders, Plaintiff "lost the physical use of its property and was forced to suspend and curtail business operations." D.E. 22 ¶ 45. Moreover, Plaintiff does not allege that access to its restaurant was completely prohibited by order of a civil authority. In fact, in its response brief,

11

Plaintiff concedes that the Executive Orders cited in the Amended Complaint "closed all food-serving establishments *except for delivery or take-out services*." D.E. 27 (emphasis added). In other words, these orders did not prohibit customer access to Plaintiff's restaurant, but merely restricted access to indoor dining, while the restaurant remained open for delivery and takeout. Given these deficiencies, the Court finds that Plaintiff fails to allege coverage under the Civil Authority Additional Coverage section.

## IV.   Conclusion

For the foregoing reasons, Plaintiff's Amended Complaint is subject to dismissal. Given that Plaintiff has already had an opportunity to amend its initial complaint, and because the Court finds that any further amendment would be futile, the dismissal is with prejudice. Accordingly, it is hereby

ORDERED AND ADJUDGED that the Motion (D.E. 24) is GRANTED. Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE. It is further

ORDERED AND ADJUDGED that the Clerk of Court SHALL close this case. All future hearings and deadlines are CANCELLED, and all pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers, Miami, Florida, this 9th day of December, 2020.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

Copies furnished:
All counsel of record